**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

In re MONA LISA AT CELEBRATION, LLC,

    Debtor.
_____

WESTCHESTER FIRE INSURANCE COMPANY,

    Appellant/Cross-Appellee

vs.

LAURA BRUNO, *et al.*,

    Appellees/Cross-Appellants.
_____

Case No. 6:12-cv-1339-Orl-37
Consolidated With
Case No. 6:12-cv-1351-Orl-37
Case No. 6:12-cv-1352-Orl-37
Case No. 6:12-cv-1353-Orl-37

## ORDER

This cause is before the Court on the following:

1. The Record before the Bankruptcy Court (Docs. 1–30);

2. Brief of Appellant Westchester Fire Insurance Company (Doc. 39), filed October 18, 2012;

3. Appendix to Brief of Appellant Westchester Fire Insurance Company (Doc. 40), filed October 18, 2012;

4. Appellees' Response Brief/Cross-Appellant's Initial Brief (Doc. 46), filed November 1, 2012;

5. Appellant Westchester Fire Insurance Company's Reply Brief/Response to Cross-Appeal Brief (Doc. 49), filed November 15, 2012;

6. Appellees/Cross-Appellants' Reply Brief (Doc. 50), filed November 29, 2012).

**BACKGROUND**

The debtor in these consolidated bankruptcy appeals, Mona Lisa at Celebration, LLC, marketed, developed, and sold condominium units of a luxury hotel in Celebration, Florida. (Doc. 10-2, p. 2.) Appellees/Cross-Appellants (the "Buyers") purchased these condominiums from Mona Lisa before construction of the hotel was substantially completed. (*Id.* at 2–3.) As part of their purchase agreements, the Buyers were required to pay a deposit of more than 10% of the condominium's purchase price. (*Id.* at 3.) These funds were deposited into an escrow account maintained by SunTrust, which acted as Mona Lisa's escrow agent. (*Id.*) The Buyers deposited $3.38 million in all. (*Id.*)

The Florida Condominium Act requires a developer of a condominium like Mona Lisa to place such deposits in escrow. *See* Fla. Stat. § 718.202(1). Florida law requires the first 10% of the purchase price to remain in escrow unless the state agrees to accept other assurances that equal "the escrow requirements of this section." *Id.* The Court will call these funds the first 10% deposited funds. These funds can be dispersed only in enumerated circumstances. *Id.*

Deposits in excess of 10% of the condominium's purchase price are treated differently under Florida law. The Court will refer to these funds as the over 10% deposited funds. If the condominium purchase agreement permits and otherwise conforms to the requirements of the act, a developer may withdraw the over 10% deposited funds from escrow so long as the withdrawn funds are used to pay for the "actual construction and development" of the property in which the condominium is found. *Id.* § 718.202(2)–(3). These funds must be held in a special escrow account. *Id.*

If a developer fails to comply with the requirements of Florida Condominium Act, then a condominium purchase agreement is voidable by the buyer. *Id.* § 718.202(5). If a

2

buyer chooses to void an agreement, he is entitled to receive all of the funds deposited in escrow. *Id.*

Mona Lisa chose to obtain a surety bond—an acceptable other assurance under Florida law—from Westchester Fire Insurance Company so that it could withdraw the first 10% deposited funds from escrow. (Doc. 10-2, p. 3.) Mona Lisa fell behind the original construction schedule but completed construction of the hotel in 2008. (*Id.* at 3–4.) By the end of that year, over 70 of the 240 condominium buyers closed on the sale of their units. (*Id.* at 3–4.) The remaining buyers, however, did not. (*Id.*) Property values had decreased substantially since the beginning of construction. (*Id.*) Some buyers refused to close on their sales contracts; some buyers filed lawsuits seeking recession of their contracts. (*Id.*) The debtor struggled and then filed for bankruptcy on January 15, 2009. (*Id.*)

Seventy-one buyers joined four adversary proceedings that were filed in the debtor's bankruptcy proceedings. (*Id.* at 4–5.) The Buyers brought numerous claims in these proceedings against Mona Lisa, SunTrust, and Westchester. (*Id.* at 5–7.) The bankruptcy court consolidated the four adversary proceedings and adjudicated the parties' cross motions for summary judgment. (*Id.*) The bankruptcy court ruled that Mona Lisa, SunTrust, and Westchester were entitled to summary judgment on a majority of the Buyers' claims.

The bankruptcy court, however, concluded that Mona Lisa had violated the Florida Condominium Act by failing to properly segregate the first 10% deposited funds from the over 10% deposited funds. (*Id.* at 41–45.) The bankruptcy court also concluded that Mona Lisa used the funds held in escrow in violation of the prohibitions of the Florida Condominium Act. (*Id.* at 45–50.) In addition, the bankruptcy court concluded

that Mona Lisa breached the Buyers' purchase agreements. (*Id.* at 72–78.) As such, the bankruptcy court held that the Buyers were entitled to a full refund of their deposits with interest, the payment of reasonable attorney's fees and costs, and the revocation of their purchase agreements. (*Id.* at 53, 78.) These findings are not challenged on appeal.

The Buyers also claimed that Westchester, as issuer of the surety bond, must pay the amounts of any deposits refunded by the bankruptcy court. (*Id.* at 78–80.) The bankruptcy court agreed, and granted summary judgment in favor of the buyers and against Westchester on this issue. (*Id.*) The bankruptcy court reasoned that the operative clauses of surety agreement obligated Westchester to pay the full amount of any refund the Mona Lisa failed to pay. (*Id.*) Thus, the bankruptcy court ruled that Westchester is liable to the Buyers for all deposits due and payable by Mona Lisa up to the bond limit, but that Mona Lisa was liable for the interest, fees, and costs due to the Buyers as a consequence of Mona Lisa's breach of the purchase agreements and violations of the Florida Condominium Act. (*Id.*)

Westchester commenced four bankruptcy appeals challenging the decision of the bankruptcy court that it was liable to pay the full amount of the refunded deposits.[1] (Doc. 39.) The Buyers appeal the bankruptcy court's finding that Mona Lisa, rather than Westchester, is liable to pay their attorney's fees as well as the bankruptcy court's refusal to award them prejudgment interest from Westchester. (Doc. 46.) This Court consolidated these four related bankruptcy appeals, ordered the parties to submit consolidated briefs on the merits, and heard oral argument.

---

[1] This Court has jurisdiction over these consolidated appeals under 28 U.S.C. § 158(a) because the claims raised in the adversarial proceedings are core matters under 28 U.S.C. § 157.

4

**STANDARDS**

The district court functions as an appellate court in reviewing decisions of the bankruptcy court. S*ee, e.g.*, *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). A bankruptcy court's grant of summary judgment is reviewed *de novo* and under the standard of Federal Rule of Civil Procedure 56, which permits summary judgment only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1328.

**DISCUSSION**

**I.    Did The Bankruptcy Court Properly Construe The Surety Bond To Require Westchester To Pay The Full Amount Of The Refunded Deposits?**

Westchester argues on appeal that the bankruptcy court improperly construed the surety bond to provide for payment of the over 10% deposited funds. It contends that the intent of the contracting parties, as evidenced by the bond's whereas clause, was to provide security for only the under 10% deposited funds, which was required by the Florida Condominium Act before Mona Lisa could withdraw the first 10% deposited funds from escrow. Westchester argues that the bankruptcy court erred by narrowly relying upon a only a portion of one operative clause of the bond. Westchester argues further that the bankruptcy court erred by not giving effect to a clause in the bond that limits the surety's obligation to pay under the bond "only to the extent and amount necessary to bring the developer into compliance with the Escrow Agreements."

The Buyers argue in support of the bankruptcy court's decision. They contend that the bond plainly obligates Westchester to pay all refund deposits not paid by Mona Lisa "as required by Chapter 718, Florida Statutes, and/or agreements with buyers." The Buyers argue that Florida law rejects the use of recitals and whereas clauses to

5

change the meaning a contract's operative clauses. They also argue that, to the extent the bond language is ambiguous, it should be construed in their favor.

The surety bond at issue here is a simple two-page instrument with a rider. (Doc. 2-19.) The first page identifies Westchester as the surety and Mona Lisa as the principal. (*Id.*) The recitals follow the identification of the parties, stating:

> KNOW ALL PERSONS by these presents that the PRINCIPAL and the SURETY are held and firmly bounds unto the Division of Florida Land Sales, Condominiums and Mobile Homes of the Department of Business and Professional Regulation, State of Florida (hereinafter, "DIVISION") and/or unto SunTrust Bank (hereinafter "ESCROW AGENT") as obligees in the amount of Five Million Dollars and No/100 DOLLARS ($5,000,000.00), lawful money of the Unites States of America (said amount being a portion of the estimated total sum of the initial ten percent (10%) of deposits paid by purchasers to Developer pursuant to Purchase agreements for the purchase of condominium units in *Mona Lisa at Celebration*, *a Condominium* in the State of Florida) for which payment will be made, the PRINCIPAL and the SURETY bind themselves, their heirs, executors and administrators, successors and assigns, and each of them jointly and severally, firmly by these presents.

(*Id.*) The operative clauses of the bond agreement begin on the second page. (*Id.*) The first relevant operative clause is paragraph 4, which provides:

> When PRINCIPAL fails to refund deposits as required by Chapter 718, Florida Statutes, and/or agreements with buyers, ESCROW AGENT or the DIVISION may declare this bond in default and SURETY is required to disperse funds in the amount of the refund deposits that are due and payable, within 30 days by SURETY, as a debt to ESCROW AGENT or DIVISION, the amount being payable subject to any reductions in the face amount calculated pursuant to Paragraph 5 herein.

(*Id.*) The clause immediately following this limits the disbursement of funds under the bond to only those funds "necessary to bring the Developer into compliance with the Escrow Agreements" while another clause limits the Westchester's liability to the amount of the bond. (*Id.*)

The Court concludes, as did the bankruptcy court, that the bond instrument

6

plainly obligates Westchester to pay the entire amount of the deposits that Mona Lisa fails to pay. The operative clauses of the bond are clear. They contemplate refunding deposits "as required by Chapter 718, Florida Statutes, and/or agreements with buyers." Because the Florida Condominium Act requires Mona Lisa to refund of all deposits under a void contract,[2] Westchester is likewise required by the terms of the bond to pay the entire amount of the deposits, not just the first 10% deposited funds. Thus, there is no need to turn to the bond's recital paragraphs to construe the bond. *See, e.g.*, *Johnson v. Johnson*, 725 So. 2d 1209, 1212 (Fla. 3d DCA 1999) (holding that "prefatory recitations" of contracts are not binding, operative provisions to an "otherwise unambiguous contract").

Even if this Court were to consider the bond recitals, the result would not change. First, the recitals cannot fairly be said to unambiguously express the intent of Westchester and Mona Lisa to limit payments under the bond to the first 10% deposited funds. Rather, the Court understands this portion of the recitals merely to identify the manner in which the parties determined the amount of the bond.[3] Such a statement would be useful, for example, to convince the state regulators that the surety bond was an acceptable assurance sufficient to allow for the withdrawal of the first 10% deposited

---

[2] Subsection (5) of Section 718.202 of the Florida Statutes provides:

> The failure to comply with the provisions of this section renders the contract voidable and, if voided, <u>all sums deposited or advanced under the contract shall be refunded</u> with interest at the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan associations in the area in which the condominium property is located.

Fla. Stat. § 718.202(5) (emphasis added).

[3] This is consistent with the use of the remainder of the recitals to identify the various actors—the surety, the developer, and the state regulator.

funds from escrow as provided by the Florida Condominium Act.

Second, Westchester ignores the remaining recital paragraphs, one of which contemplates the escrow of "all deposits received by the Developer from the purchasers of condominiums" and that such funds would not be released from escrow except "in accordance with Chapter 718, Florida Statutes, and in accordance with the Escrow Agreements." (Doc. 2-19.) This language is similar to the language of the operative clause and, like the operative clause, does not delineate between the first 10% deposited funds and the over 10% deposited funds. It refers instead to all deposits. This is consistent with the Florida Condominium Act, which mandates the return of "all sums deposited or advanced" under a voided purchase agreement, not just the first 10% of the deposits. Fla. Stat. § 718.202(5).

The Court is likewise not persuaded by Westchester's argument that a payment under the bond is paid "as a debt to" the escrow agent or state regulator. Contrary to Westchester's arguments, the escrow agent is not limited in its liability to the first 10% deposited funds under the escrow agreement. That agreement contemplates that the escrow agent could be liable for release of the over 10% deposited funds and provides that the developer will indemnity the escrow agent for such payments. This liability would be a "debt" owed to the escrow agent by Mona Lisa.

Put simply, the bankruptcy court did not err when it concluded that Westchester is liable to the Buyers for all deposits due and payable by Mona Lisa up to the surety bond limit.

**II.    Did The Bankruptcy Court Err When It Concluded That Westchester Is Not Liable To Pay The Buyers' Attorney's Fees?**

In their cross appeal, the Buyers contend that the bankruptcy court should have

required Westchester to pay their attorney's fees. The Buyers argue that that are entitled to an award of fees under Section 627.428 of the Florida Statutes, which authorizes courts to award attorney's fees in lawsuits involving insurance contracts. Westchester opposes.

The Court is not persuaded by the Buyer's arguments regarding the bankruptcy court's award of attorney's fees. First, the Buyers' argument that they are entitled to an award under Section 627.428 was not raised before the bankruptcy court. The Buyers point to no part of the record where they made this argument to the bankruptcy court. The Court has conducted a thorough review of the lengthy bankruptcy record in these consolidated appeals and can find no place where the Buyers ask the bankruptcy court to award them attorney's fees under Section 627.428. The Court also finds no reference to Section 627.428 in the orders of the bankruptcy court that are under review. Instead, the bankruptcy court's reasoning focused on the language of the surety bond, which is understandable given that a legal basis for the Buyer's requests for fees was not provided at all in their complaints, their motions for summary judgment, or (so far as the Court can tell) in any paper. Because this argument was not raised before the bankruptcy court, the Court finds that it was waived. *See, e.g.*, *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1337 n.6 (11th Cir. 2000) (holding arguments not timely raised in the bankruptcy court are waived on appeal); *Mazon v. Tardif (In re Mazon)*, 395 B.R. 742, 748 (M.D. Fla. 2008) (noting that an appellate court may only consider issues raised for the first time on appeal in limited circumstances).

Second, even if the Court were to consider the argument on the merits—which it need not—the argument is not persuasive as it rests on a misunderstanding of the statute as applied to surety agreements. Although surety agreements are considered a

form of insurance under Florida law, such agreements are different from traditional insurance contracts. Generally, a suretyship is a tripartite agreement between a surety, a principal, and a creditor "where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform." Restatement (First) of the Law of Security § 82 (1941). "The surety is the person who is bound on an obligation from which another, by the discharge of a duty, should relieve him." *Id.* § 82 cmt. b. "The principal is the person who, in the solution of the rights and duties of the parties, should bear the ultimate burden unless excused for some reason personal to himself." *Id.* § 82 cmt. c. Lastly, the "creditor is the person to whom the surety is bound and to whom the principal is under an obligation or other duty." *Id.* § 82 cmt. d. If the suretyship is based on a contract, like the surety bond here, the creditor is the obligee. *Id.; see also Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216 (Fla. 2006) (referring to the creditor of a surety agreement as an obligee and holding that it is an "insured" under Florida's bad faith insurance claim statute).

In these appeals, the principal is Mona Lisa; the surety is Westchester; and the creditors are SunTrust, as the escrow agent, and the State of Florida, acting through its regulatory agency. The Buyers come into play in that the obligation that Westchester has undertaken (if Mona Lisa fails to do so) is to refund the Buyers' deposits. The Buyers are not provided any rights directly, however, under the general law of suretyship or the express terms of the surety bond at issue in this case. They are—as

Westchester correctly points out—third-party beneficiaries under the surety bond.[4]

Third-party beneficiaries are not entitled to receive an award of attorney's fees under Section 627.428. *See, e.g.*, *Roberts v. Carter*, 350 So. 2d 78 (Fla. 1977) (holding that a third-party beneficiary under an insurance contract is not entitled to an award of fees under the statute). As the Florida Supreme Court explained in *Industrial Fire and Casualty Insurance Company v. Prygrocki*, 422 So. 2d 314, 316 (Fla. 1982), there may be a class of persons who are considered "insureds" under a traditional insurance contract who are not specifically named or designated in the contract. The *Roberts* opinion referred to such persons as "contracting insureds." *Id.* In contrast to third-party beneficiaries, contracting insureds are authorized fees awards under the Section 627.428. *Id.*

The Florida Supreme Court's use of the term "contracting insureds" caused much confusion among Florida courts, and so the Florida Legislature amended the statute shortly before the Florida Supreme Court issued its opinion in *Prygrocki*. *Id.* at 316 fn. The Legislature did so to clarify that awards of fees to persons who are considered an insured under a policy but who are not specifically named or designated in the policy are authorized under the statute. *Id.* The Legislature chose to refer to such persons not as "contracting insureds" but rather as "omnibus insureds." *Id.* It used this term because it is "frequently used to refer to an individual insured under an omnibus clause of an

---

[4] Under Florida law, a "party is a third-party beneficiary of a contract only if both parties to the contract express an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc.*, 53 So. 3d 348, 355 (Fla. 4th DCA 2011). In the context of surety bonds, Florida law permits a third-party to recover on a surety bond only if the suretyship parties intended to make the third-parties beneficiaries of the bond. *See, e.g.*, *Crabtree v. Aetna Cas. & Sur. Co.*, 438 So. 2d 102, 105–06 (Fla. 1st DCA 1983); *Nat'l Union Fire Ins. Co. v. Westinghouse Elec. Supply Co.*, 206 So. 2d 60, 61–62 (Fla. 3d DCA 1968).

insurance policy." *State Farm Fire & Cas. Co. v. Kambara*, 667 So. 2d 831, 833 (Fla. 4th DCA 1996).

Consistent with this background, Florida courts define an omnibus insured under Section 627.428 as "one who is covered by a provision of the policy but not specifically named or designated." *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 374 (Fla. 2008). As such, "the rights of an 'omnibus insured' flow 'directly from his or her status under a clause of the insurance policy without regard to the issue of liability.'" *Id.* (quoting *State Farm Fire & Cas. Co. v. Kambara*, 667 So. 2d 831, 833 (Fla. 4th DCA 1996)). In other words, an omnibus insured is a first-party beneficiary under an insurance contract. *Kambara*, 667 So. 2d at 833–34.

When viewed through the lens of the traditional insurance context, the party to a surety agreement who is considered a first-party beneficiary (that is, an "insured") is the obligee. *See Dadeland Depot, Inc.*, 945 So. 2d at 1226. The obligees here are SunTrust and the State of Florida, not the Buyers. Consistent with the law of suretyship, the bond obligates Westchester to reimburse SunTrust or the State of Florida for damage incurred as a result of Mona Lisa's default. *See, e.g.*, *Westchester Fire Ins. Co. v. City of Brooksville*, 731 F. Supp. 2d 1298, 1307 (M.D. Fla. 2010) (describing the difference between penalty bonds and indemnity bonds). There is no provision in the surety bond that permits the Buyers' to recover from Westchester directly. Indeed, the bond plainly prohibits payment of benefits under the bond to anyone other than the obligees. Section 627.428, therefore, does not authorize an award of fees to the Buyers from Westchester.

In view of the above, the bankruptcy court did not err when it declined to award fees to the Buyers pursuant to Section 627.428 of the Florida Statutes.

**III.   Did The Bankruptcy Court Err By Not Requiring Westchester To Pay Interest On The Deposits?**

The Buyers also argue on appeal that the bankruptcy court erred when it did not require Westchester to pay prejudgment interest.[5] The bankruptcy court denied the Buyers' request for prejudgment interest, reasoning that Westchester is liable only for the refund deposits due and payable, not all amounts due and payable by Mona Lisa. In their initial brief, the Buyers argue only that they are entitled to an award of prejudgment interest against Mona Lisa and, without citation to any legal authority, that "the same interest awarded against Mona Lisa is properly awarded against . . . Westchester." Westchester argues in response that its liability flows only from the provisions of the bond.

For the first time in their reply brief, the Buyers present an argument as to how Westchester may be held liable for an award of prejudgment interest. They argue that Westchester must pay prejudgment interest because the bond requires Westchester to pay an amount necessary to "bring [Mona Lisa] into compliance with the Escrow Agreements." According to the Buyers, the escrow agreement requires SunTrust to pay them, to "the extent required under the Condominium Act or in the applicable Contract," the deposits plus any interest earned on the deposits.

The Court does not find the Buyers' arguments persuasive. First, as a general proposition, and in the interests of fairness to all parties and efficient use of judicial resources, new arguments raised for the first time in a reply brief should not be considered. *See, e.g.*, *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342

---

[5] All the parties to these appeals focus their arguments on Westchester's liability to pay pre-judgment interest even though the issue on appeal was arguably framed more broadly. The Court restricts its analysis to only those issues actually argued in the papers.

(11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."). The Buyers could have presented its argument as to why Westchester should be required to pay prejudgment interest in their opening brief. Having chosen not to do so at that time, but choosing instead to posture and require Westchester to guess as to the legal basis of their claim, they cannot reconfigure their claim in their reply in an attempt to sidestep Westchester's arguments.

Second, the Buyers' arguments are based, again, on a misunderstanding of the law of suretyship. "A general principle of suretyship is that the liability of the surety is ordinarily measured by, and coextensive with, the liability of the principal." *Crabtree v. Aetna Cas. & Sur. Co.*, 438 So. 2d 102, 105 (Fla. 1st DCA 1983). The surety's liability is measured by the liability of the principal <u>under the bond</u>. *Id.* To the extent any third-party beneficiary may recover from a surety, that third-party beneficiary's entitlement to damages is limited to, and coextensive with, the rights of the contracting party through whom he claims. *Id.* In other words, a third-party beneficiary of a surety bond entitlement to damages is derived from the rights of one of the contracting parties.

In these appeals, as noted by the bankruptcy court, the bond obligates Westchester to only "disperse funds in the amount of refund deposits that are due and payable." SunTrust and the State of Florida, therefore, are entitled to payment under the bond of only an amount equal to the refund deposits that are due and payable, and the Buyers (whose rights derive from that of SunTrust and the State of Florida) are entitled to receive only that amount as well.[6]

---

[6] Indeed, SunTrust appears to have taken this limitation of the surety bond into consideration because the escrow agreement requires Mona Lisa to indemnify SunTrust

Thus, Westchester is not obligated under the bond to pay prejudgment interest, and the bankruptcy court did not err when is failed to direct Westchester to pay prejudgment interest to the Buyers.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The bankruptcy court's decision and final judgments are **AFFIRMED**.

2. The Clerk is directed to close these consolidated bankruptcy appeals.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 21, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record

---

for all amounts paid to condominium purchasers pursuant to the escrow agreement, not just refunded deposits.